LOTTINGER, Judge.
This is an action for writ of mandamus in which seven District Attorneys, as petitioners, seek to have the court order the State Treasurer and State Comptroller to honor warrants for nine months back sal *532 ary they claim is due them by virtue of the provisions of Act No. 12 of the 1967 Regular Session of the Louisiana Legislature. The Act, as same is applicable herein, fixed the salaries of the petitioners at the sum of $10,000.00 each, payable monthly by the State Treasurer upon warrants drawn by petitioners. The effect of this salary was to increase the previous salary of petitioners, as fixed by R.S. 16:10, by the sum of $4,500.00 per annum. The general Appropriations Act of the Regular Legislative Session of 1967 provided for the payment of the full salary of petitioners as fixed by Act 12 of 1967. Act 12 was signed by the House and Senate on June 1, 1967 and signed by the Governor of the State of Louisiana, on June 10, 1967. According to the provisions of Article 3, Section 20 of the Constitution of the State of Louisiana, Act 12 of 1967 became effective twenty days after the signature of the Governor, or twenty days after the Legislature adjourned, or June 26, 1967.
The increase in salary provided by said bill, however, was held in suspension and not paid from July of 1967 through March of 1968, because of Senate Concurrent Resolution No. 69 which was signed on June 6, 1967, and which provides as follows :
“Be it resolved by the Senate of the Legislature of Louisiana, the House of Representatives, thereof concurring, that any House and Senate Bills introduced and finally passed at this 1967 Regular Session of the Legislature, which have been or may be finally passed, and which shall be signed into law by the Governor, which increase or have the effect of increasing the salary or compensation of any state, district, parish or municipal officer or person presently in office, where such increase is payable out of state funds, shall be suspended as to the payment of any additional state funds, and shall not be placed into operation insofar as additional state funds are thereby authorized until the first day of that quarter of the fiscal year next succeeding the date on which the pay plan for classified employees approved by the State Civil Service Commission, and submitted to the Governor by letter dated March 17, 1967, is fully implemented.
Be it further resolved that this resolution shall have no effect insofar as any bills are concerned which increase salaries from funds other than state funds.
Be it further resolved that the State Comptroller is hereby directed to approve no warrants and the State Treasurer is directed to pay out of the State Treasury no state funds for the purpose of paying any increases provided by any such bill until the herein referred to Pay Plan is fully implemented and the fact of such implementation has been certified to him by the Governor.” (Emphasis supplied)
The evidence shows that the Governor certified the fact of implementation of the pay plan for classified employees approved by the State Civil Service Commission on or about March 29, 1968. Petitioners are claiming each the gross sum of $3,375.00 representing their additional salaries provided for by said Act 12 from July 1, 1967, the effective date of said Act, through March 31, 1968, the date that the Civil Service employees salary implementation was certified by the Governor.
After trial on the merits, judgment was rendered by the Lower Court in favor of the defendants. In said judgment the alternative writ of mandamus that had issued herein was recalled and vacated, and the temporary restraining order was dissolved. Thereafter the petitioners moved for a new trial and after hearing on said motion, same was denied and this appeal taken.
The defendants maintain that when the Lower Court recalled the alternative writ of mandamus and dissolved the temporary restraining order, the funds appropriated for payment of petitioners increased sal *533 aries were transmitted to the State Treasury as required by Section 2 of Act 8 of 1967. Therefore, there are no funds at this time out at which petitioners can be paid, and therefore, any favorable judgment to petitioners would be of no avail and a vain and useless thing. Section 2 of Act 8 of 1967 provides as follows:
“The appropriations made in this Act from State revenues shall be payable out of the sources specified, but only on condition that all unencumbered cash balances accruing from appropriations made to any state agency from any source, either by legislative act or by the Board of Liquidation of the State Debt, for the fiscal year 1966-1967, shall be transmitted to the State Treasurer by July 15, 1967; provided however, that any undrawn State monies from 1966— 1967 appropriations remaining in the State Treasury at the end of the fiscal year against which bona fide purchase orders existed as of June 30, 1967, may be withdrawn from the Treasury during the ninety-day period after July 1, 1967, only as such purchase orders come due for payment. It is further provided that no agency of the state receiving an appropriation in this Act shall obligate any of such funds for any purpose after the close of business on June 30, 1968, and withdrawals by the agencies from the State Treasury during the fiscal year shall be limited to cash needs of the agency only. Complete liquidation or cancellation of all obligations against State appropriations must be effected within ninety days after June 30, 1968.”
In State ex rel. Averill v. Cooper, La.App., 43 So.2d 163, wherein the relators were seeking to have the Collector of Revenue pay them certain money claimed to be due for annual leave, this Court said:
“In order to maintain a writ of mandamus, it must be established that funds are available with which to pay the claim
* * * There is no doubt from the testimony that on April 21, 1949, the date of the trial, there were no funds at all from which the payment of relators’ claims could be made. Relators contend that the transfer of these funds was illegal as the respondents had full notice of and had been served with the alternative writ of mandamus on the first day of July, 1948. We cannot see any merit in this contention, for there was nothing in the order of the Court prohibiting the transfer of these funds or ordering same not to be done or injoining the transfer of the funds or a sufficient amount to cover the claims of relators and, therefore, under the terms of Act No. 66 of 1946 (the General Appropriations Act) it specifically provided that all appropriated surplus at the end of the bi-annum should be paid into the State Treasury to the account of the State General Fund. * * * Relators suit must be dismissed by reason of the fact there were no funds available on the date of the trial to pay rela-tors’ claims, and a favorable judgment to the relators would be to no avail and a vain and useless thing.”
The facts in State ex rel. Ascension Red Cypress Co. v. New River Drainage District et al., 148 La. 603, 87 So. 310, are also very similar to the facts presented in the present case. There, the Supreme Court said:
“As a matter of fact, the board of commissioners had no funds with which to pay the judgment, at the time the suit was tried. It appears that there were surplus funds sufficient to pay the judgment, when the suit was filed, but the funds had been expended when the suit was tried.”
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by petitioners.
Judgment affirmed.