768 A.2d 1066 (2001)
338 N.J. Super. 324
FIRST NATIONAL BANK OF CHICAGO as Trustee for the Benefit of the Holders of Commercial Mortgages Pass-Through Certificates, Series 1994-C2, Plaintiff-Respondent,
v.
BRIDGETON MUNICIPAL PORT AUTHORITY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 2001.
Decided March 23, 2001.
*1067 David F. Raczenbek, Bridgeton, argued the cause for appellant (Casarow, Kienzle & Raczenbek, attorneys; Mr. Raczenbek, on the brief).
Patricia A. Celano, Newark, argued the cause for respondent (McCarter & English, attorneys; Joseph Lubertazzi, Jr., of counsel; Ms. Celano, on the brief).
Before Judges KING, COBURN and AXELRAD.
The opinion of the court was delivered by COBURN, J.A.D.
The question presented is whether a mortgagee can foreclose on a municipal port authority's real estate. Since the answer is no and another remedy is available to enforce payment of the promissory note, we reverse the judgment of foreclosure and remand for further proceedings.
The relevant facts are not in dispute. In 1985, defendant Bridgeton Municipal Port Authority ("BMPA"), an entity created pursuant to the port authorities law, N.J.S.A. 40:68A-1 to -69, purchased a parcel of local real estate known as the Sorantino Warehouse Building. There is no suggestion that the purchase was for other than public purposes. In 1988, with the approval of the State Local Finance Board, BMPA arranged for an $800,000 loan from Security Savings Bank secured by a note and a mortgage on the property. Plaintiff, First National Bank of Chicago, brought this action as assignee because defendant defaulted on the note. The mortgage allows foreclosure on default. Plaintiff obtained a judgment of foreclosure that requires public sale of the mortgaged premises and sets the balance due at $631,900.48 plus counsel fees of $6,469.00. BMPA appeals, contending that the remedy of foreclosure violates N.J.S.A. 40:68A-60. We agree.
In 1948, the Legislature enacted the port authorities law, N.J.S.A. 40:68A-1 to -69, to promote the general welfare by fostering the "proper establishment and development of port facilities of the State." N.J.S.A. 40:68A-2. Municipalities were authorized to create port authorities, such as BMPA, for that purpose, N.J.S.A. 40:68A-4. To further protect the general welfare, the Legislature provided that all port authority property would be exempt from execution:
All property of a municipal port authority shall be exempt from levy and sale by virtue of an execution and no execution or other judicial process shall issue against the same nor shall any judgment against a municipal port authority *1068 be a charge or lien upon its property provided, that nothing herein contained shall apply to or limit the rights of the holder of any bonds to pursue any remedy for the enforcement of any pledge or lien given by a municipal port authority on its system revenues or other moneys.

[N.J.S.A. 40:68A-60.]
Without challenging the validity of this section of the law and without suggesting that it is ambiguous, plaintiff contends that it should be construed, contrary to its literal meaning, as applying only to involuntary liens and not to a consensual lien created by a mortgage. According to plaintiff, a literal reading would conflict with the statutory authority to purchase land, N.J.S.A. 40:68A-40(11) and (12), and would lead to an absurd or unreasonable result in that no lender would be willing to advance a loan secured by a mortgage on which it could not foreclose, thereby frustrating the agency's ability to secure financing for real estate purchases that advance the public welfare.
When confronted with words whose literal application would cause absurd, anomalous or otherwise inconceivable results, courts must always be prepared to ask whether the "instant case involves a situation which apparently escaped the attention of the draftsman ... or at least was one where it was felt that the solution did not require an express statutory provision." Dvorkin v. Dover Tp., 29 N.J. 303, 313, 148 A.2d 793 (1959). In New Capitol Bar & Grill Corp. v. Division of Employment Sec., 25 N.J. 155, 135 A.2d 465 (1957), Chief Justice Weintraub more fully explained the obligation of courts interpreting legislation:
It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms."
[Id. at 160, 135 A.2d 465 (citation omitted).]
But those sound principles have no application to this case since a literal reading of this statute effects the legislative purpose and leads to a result that is neither absurd, anomalous, otherwise inconceivable or, as suggested by plaintiff, inconsistent with any other portion of the legislation.
The Legislature often has provided the protection at issue in virtually the same language for many other governmental agencies. See, e.g., N.J.S.A. 5:12-168 (Casino Reinvestment Development Authority); N.J.S.A. 13:17A-40 (Hackensack Meadowlands Food Distribution Center Commission); N.J.S.A. 40:14B-59 (municipal or county water and sewage disposal authorities); N.J.S.A. 40:37A-82 (county improvement authorities); N.J.S.A. 40:37B-38 (county recreational authorities); N.J.S.A. 40:66A-22 (incinerator authorities); N.J.S.A. 40A:12A-34 (redevelopment agencies and housing authorities); and N.J.S.A. 58:14-34.21 (Passaic Valley Sewerage District).
Moreover, those enactments are essentially restatements of a settled common law principle affording governmental entities precisely the same protection from execution. Martin v. Asbury Park, 114 N.J.L. 298, 176 A. 172 (E. & A.1935) (involving execution on a personal injury judgment); Piscataway Twp. Committee v. First Nat. Bank of Dunellen, 111 N.J.L. 412, 414-415, 168 A. 757 (E. & A.1933) (involving a default on a temporary improvement note); Vanderpoel v. Mount Ephraim, 111 N.J.L. 423, 424, 168 A. 575 (E. & A.1933) (involving defaulted bonds); Lyon v. City of Elizabeth, 43 N.J.L. 158 (Sup.Ct.1881) (involving execution of a *1069 judgment on an unspecified cause of action). See generally, 30 Am.Jur. 2d, Executions, § 197, 154-55 (1994). As the Court observed in Vanderpoel, "The fundamental needs of government require that municipalities be free from the seizure of lands and of personal property used in the exercise of a governmental function." 111 N.J.L. at 424, 168 A. 575. That principle is reinforced by a literal reading of the statute under consideration, and there is nothing to suggest that the Legislature intended to except contractual obligations, such as those considered in Piscataway Twp. and Vanderpoel.
We reject plaintiff's contention that a literal reading of this statute will interfere with the ability of government agencies to obtain bank loans. Enforcement of the obligation may be had in an action in lieu of prerogative writs for mandamus pursuant to R. 4:69. That is the form of relief recognized by the above-mentioned cases. More recent endorsements of that approach appear in Jersey Cent. v. Kingsley Arms, 271 N.J.Super. 68, 84, 637 A.2d 1303 (Law Div.1993); and Grosso v. Paterson, 59 N.J.Super. 412, 414-16, 157 A.2d 868 (Law Div.), aff'd, 33 N.J. 477, 166 A.2d 161 (1960).[1] In these circumstances, however, a new action under R. 4:69 is not required. Jersey Cent., 271 N.J.Super. at 85-86, 637 A.2d 1303.[2]
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Although the Supreme Court did not discuss mandamus, its approval of that aspect of the trial court's ruling is implicit.
[2] Although not mentioned by the parties, we observe that our literal reading of the statute finds further support in another section of the port authorities law, N.J.S.A. 40:68A-21, which, in part, appears to prohibit the mortgaging of property by a municipal port authority:

Neither the port authority nor any local unit shall have power to mortgage, pledge, encumber or otherwise dispose of any part of the port facilities, except that the port authority may dispose of such part or parts thereof as may be no longer necessary for the purposes of the port authority.
This section then reiterates in almost identical language the provisions of N.J.S.A. 40:68A-60 quoted above. It does not seem inconsistent with N.J.S.A. 40:68A-40(4), which permits such authorities to obtain property "subject to" existing "mortgages, deeds of trust or other liens...."